COLONIAL AMERICAN LIFE INSURANCE COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Colonial American Life Ins. Co. v. Commissioner
Docket No. 20384-83.
United States Tax Court
T.C. Memo 1986-226; 1986 Tax Ct. Memo LEXIS 384; 51 T.C.M. (CCH) 1123; T.C.M. (RIA) 86226; June 4, 1986. Thomas G. Nash, Jr., for the petitioner. Seymour I. Sherman, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies of $168,031.01 and $197,481.99 in petitioner's Federal income taxes for 1975 and 1976, respectively. After concessions *385 by the parties, the issue remaining for decision is whether the ceding commission paid by a reinsuring company to an initial insurer under contracts for indemnity reinsurance may be deducted currently by the reinsuring company or must be amortized over the anticipated useful life of the policies reinsured. FINDINGS OF FACT Some of the facts have been stipulated and are so found. For purposes of clarity, the general principles concerning reinsurance are incorporated in the findings of fact. Petitioner, Colonial American Life Insurance Company (Colonial), was incorporated in 1924 in the State of Louisiana. Its principal place of business at all relevant times was in New Orleans, Louisiana. Petitioner timely filed Federal income tax returns for the calendar years 1975 and 1976. At all relevant times petitioner was authorized to and did engage in the insurance business in Louisiana and in numerous other states, writing various forms of life, accident, and health insurance. Petitioner's principal insurance risks during the years in controversy consisted of life contingencies originally written by it or written by other companies and reinsured by petitioner. Reinsurance is *386 an arrangement whereby an insurance company transfers some or all of the risks it has underwritten to another insurance company. [1] The company purchasing the reinsurance is known as the initial insurer, the reinsured, or the ceding company; the company acquiring the risk is known as the reinsurer or the reinsuring company. There are basically two types of reinsurance -- assumption reinsurance and indemnity reinsurance. In assumption reinsurance, the reinsuring company takes over for the initial insurer and becomes directly liable to the policyholders.The initial insurer is relieved of all liability, including the maintenance of the required reserves. The reinsuring company has the duty of establishing and maintaining *387 the required reserves. In addition, the reinsuring company is entitled to all premiums paid and must pay all future claims and expenses with respect to the policies. With respect to indemnity reinsurance, two variations are relevant here: conventional coinsurance (hereinafter "coinsurance") and modified coinsurance (hereinafter "modified coinsurance"). In contrast to assumption reinsurance, under coinsurance and modified coinsurance, the initial insurer and the reinsuring company share the benefits and obligations arising out of the reinsured policy or contract. The initial insurer transfers to the reinsuring company all or part of its liability on the policies being reinsured, but it remains directly liable to the policyholders and continues to collect premiums and to pay claims and expenses. The reinsuring company must reimburse the initial insurer for the claims and expenses which are paid by the initial insurer and which are attributable to the risks it has reinsured. Coinsurance and modified coinsurance differ, however, in their effect on the reserves of the insurance companies involved. Essentially, reserves are liability accounts representing the present value of the *388 company's net liabilities under the policies in force. Life insurance companies are required to maintain reserves in an amount equal to the excess of the present value of future benefits payable under the policies over the present value of future net premiums. Such liability must be backed by cash or other assets of the insurance company. In a coinsurance transaction, the initial insurer reduces its reserves attributable to the ceded liability and the reinsuring company must establish reserves to cover the liability acquired. In a modified coinsurance transaction, however, the initial insurer maintains the required reserves and merely collects and pays over to the reinsurer the investment income derived from the assets supporting the reserves. Although the initial insurer does not release the reserves and underlying assets, upon the parties' consent to treatment under section 820, [2] the retention of assets and maintenance of reserves by the initial insurer are treated as custodial on behalf of the reinsuring company. Thus, for Federal tax purposes, in both coinsurance and modified coinsurance transactions, the same shift of reserves from the initial insurer to the reinsuring *389 company takes place. In coinsurance and modified coinsurance two exchanges take place: (1) the initial insurer pays the reinsuring company full consideration for the reserve liability assumed, and (2) the reinsuring company pays the initial insurer a "ceding commission" or an "initial allowance" for the business acquired. Insurance companies typically net these transactions, with only the excess amount changing hands. Thus, the reinsuring company has income equal to the reserve liability actually assumed even though such liability exceeds the consideration actually received. In 1975, petitioner entered into two reinsurance transactions, one on a coinsurance basis and the other on a modified coinsurance basis, with respect to policies of life insurance originally written by Transport Life Insurance Company (Transport), with petitioner as the reinsuring company and Transport as the initial insurer or ceding company. Petitioner and Transport consented, with *390 respect to the modified coinsurance transaction, to application of the rules for the optional treatment of policies reinsured therein provided by section 820 and the regulations thereunder. The coinsurance agreement provided for the payment by petitioner to Transport of an initial consideration or ceding commission in the amount of $60,000, and a payment by Transport to petitioner of an amount equal to the mean reserves attributable to the risks reinsured. The modified coinsurance agreement provided for the payment by petitioner to Transport of an initial consideration in the amount of $620,000. The accounting between the two companies with respect to the foregoing transactions (excluding interest) was as follows: Modified
Coinsurance
Coinsurance
Reserves Transferred
$675,762 Ceding Commission
60,000 620,000
Amount Due Transport
($615,762)
$620,000
In 1976, petitioner as reinsurer and Transport as ceding company entered simultaneously into two further reinsurance transactions with respect to the same policies, which policies belonged to the same groups or blocks of policies affected by the 1975 reinsurance transactions described above. *391 The 1976 coinsurance agreement provided for the payment of an initial consideration by petitioner to Transport of $72,000, and a payment by Transport to petitioner of an amount equal to the mean reserves attributable to the risks reinsured. The 1976 modified coinsurance agreement provided for the payment by petitioner to Transport of an initial consideration in the amount of approximately $780,000. The accounting between the companies with respect to the foregoing transactions (excluding interest) was as follows: Modified
Coinsurance
Coinsurance
Reserves Transferred
$851,398 Ceding Commission
72,000 780,000
Amount due Transport
($779,398)
$780,000
During 1975, petitioner paid a "finders fee" of $13,600 with respect to its reinsurance transactions with Transport, and deducted this sum as an expense. In his statutory notice of deficiency, respondent determined that the excess amounts of the required reserves over the cash received by petitioner [3] were attributable to the acquisition of an intangible asset with an indeterminate useful life and were not deductible. Alternatively, respondent determined that such excess amounts were attributable *392 to the cost of acquiring assets and must be amortized over their estimated life. He capitalized such amounts and restored them to petitioner's income, but allowed no amortization because the reasonable estimated life of those assets had not been established. He also included those amounts in the computation of petitioner's assets for the taxable years 1975 and 1976, respectively. Respondent disallowed the deduction for the $13,600 finders fee paid by petitioner in 1975, and restored that amount as an income item and asset for said year. The basis of respondent's action was his determination that such expense was a part of the cost of the 1975 reinsurance transactions with Transport. OPINION The first issue is whether amounts paid by a reinsuring company to an initial insurer under a contract for indemnity reinsurance may be deducted currently *393 or must be amortized over the anticipated useful life of the policies. This Court addressed this question in Beneficial Life Insurance Co. v. Commissioner,79 T.C. 627 (1982). In Beneficial, the taxpayer, a life insurance company, entered one assumption reinsurance transaction and seven indemnity reinsurance transactions. In each transaction, the taxpayer was the reinsuring company and received actual consideration from the initial insurer in an amount less than the reserve liability actually assumed. This Court held that, with respect to both the assumption reinsurance transaction and the indemnity reinsurance transactions, the taxpayer must include in income an amount equal to the reserve liability actually assumed. We further held that, with respect to the assumption reinsurance transaction, to the extent the assumed reserve liability exceeded the actual consideration received, such excess represented the cost of business acquired which is amortizable over the useful life of that business. Beneficial Life Insurance Co. v. Commissioner,supra at 642-643. With respect to the indemnity reinsurance transactions, however, we held that *394 to the extent the reserve liability assumed exceeded the actual consideration received, such excess represented a cost of issuing insurance which directly reduces the amount included in income. Beneficial Life Insurance Co. v. Commissioner,supra at 646. The Court stated that the Code itself requires different treatment of assumption reinsurance and indemnity reinsurance transactions with respect to the amounts the reinsuring company pays the initial insurer for the business acquired. The Court found that the Code treats an assumption reinsurance transaction as a sale by the initial insurer to the reinsuring company. Thus, the reinsuring company must amortize the cost of the business acquired over that business's useful life. Sec. 1.817-4(d)(2)(ii)(B), Income Tax Regs. An indemnity reinsurance transaction, however, is not treated as a sale by the initial insurer to the reinsurer, but as the initial insurer's purchase of insurance from the reinsuring company. Reinsurance income includes the consideration received with respect to assuming another's *395 contract liabilities, less "return premiums, and premiums and other consideration arising out of reinsurance ceded." Sec. 809(c)(1). "Return premiums" is defined in the regulations as follows: (ii) The term "return premiums" means amounts returned or credited which are fixed by contract and do not depend on the experience of the company or the discretion of the management. Thus, such term includes amounts refunded due to policy cancellations or erroneously computed premiums. Furthermore, amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded shall be included in return premiums. * * * Sec. 1.809-4(a)(1)(ii), Income Tax Regs. Thus, we held in Beneficial that the amount the reinsuring company returns to the initial insurer as a ceding commission may be deducted from the consideration received by the reinsuring company from the initial insurer. We have reviewed the analysis set forth in Beneficial and *396 we find it directly applicable to the instant case. Accordingly, we hold that the amount of the ceding commission paid by petitioner to Transport may be deducted. Respondent argues generally that the cost to petitioner of its reinsurance transactions constitutes an investment in the nature of a capital expenditure or a deferred expenses, which must be amortized over the reasonably anticipated life of each respective transaction. In Beneficial we responded to a similar argument and therein distinguished the acquisition of an asset from the sale of insurance. We stated: Although a reinsuring company does acquire an asset in a broad sense in the form of potential future profit, such is also true when an insurance company issues a single policy to an individual. Yet, the expenses relating to that policy are currently deductible. While respondent's argument is appealing, it does not comport with how life insurance companies are taxed with respect to insurance they issue. In essence, respondent argues indemnity reinsurance should be taxed as is assumption reinsurance; yet, the Code treats one as the issuance of insurance and one as acquisition of an asset. That makes all the *397 difference. Beneficial Life Insurance Co. v. Commissioner,supra at 647-648. In support of his position that the amounts in question must be amortized respondent relies upon Southwestern Life Insurance Co. v. United States,560 F.2d 627 (5th Cir. 1977), cert. denied 435 U.S. 995 (1978). In that case the taxpayer, in purchasing the stock of another insurer, paid an amount in excess of the value of the assets of the acquired company. The Court of Appeals sustained respondent's denial of a current deduction of that excess and found that the taxpayer should amortize that amount based on section 1.817-4(d)(2), Income Tax Regs. That section requires the reinsurer in an assumption reinsurance transaction to treat any amount paid to the reinsured for the purchase of such contracts, to the extent such amount meets the requirements of section 162, as a deferred expense under section 809(d)(12) and amortize such amount over the reasonably estimated life of the contracts reinsured, irrespective of the taxable year in which such amount was paid to the reinsured. According to respondent, because indemnity reinsurance *398 is, by definition, of limited duration, there is no question but that the reinsuring company in an indemnity reinsurance transaction is entitled to amortize its costs over the useful life of the policies reinsured. He concludes that the above regulation was intended merely to assure equal treatment in assumption reinsurance transactions by clarifying the period of amortization, thereby rebutting anticipated claims that the reinsured policies have an indeterminate life and costs connected with their acquisition are, therefore, not amortizable. Furthermore, respondent contends that the above regulation was intended to establish conclusively the right of the reinsuring company in an assumption reinsurance transaction to amortize its costs, not to authorize by inference the current deduction of the ceding commission in indemnity reinsurance. We disagree with respondent's initial assertion for the reasons set forth in support of our holding in Beneficial. Further, a determination as to whether the purpose of the above regulation is to assure the reinsuring company in an assumption reinsurance transaction of a right to amortization is irrelevant to our determination of the issue in *399 this case because the transactions here in issue are indemnity reinsurance transactions, not assumption reinsurance transactions. Finally, petitioner herein does not assert entitlement to a deduction for the ceding commission paid to the initial insurer based on an inference drawn from the above regulation, but rather on the express language of section 809(c)(1). Respondent next contends that section 809(c)(1) was misconstrued in Beneficial. He first argues that the "premiums and other consideration arising out of reinsurance ceded" to be subtracted from premium income are those paid by an initial insurer to a reinsuring company and, therefore, serve to reduce the premium income of the initial insurer and not that of the reinsuring company. Respondent compares the language of section 809(d)(7) with the language of section 809(c)(1). Section 809(d)(7) provides for the deduction of "consideration (other than consideration arising out of reinsurance ceded) in respect of the assumption by another person of liabilities under insurance and annuity contracts * * *." Respondent asserts that the phrase "consideration arising out of reinsurance ceded" appearing in that section must *400 be construed in the same manner as the identical phrase found in section 809(c)(1). He maintains that section 809(d)(7) provides for a deduction by the initial insurer and concludes that section 809(c)(1) also must provide for a deduction by the initial insurer. Finally, he states that the reduction allowed by section 809(c)(1) is an allowance in the case of reinsurance ceded (indemnity reinsurance, see sec. 1.809-4(a)(1)(iii), Income Tax Regs.) analogous to the deduction allowed under section 809(d)(7) in the case of assumption reinsurance. We disagree with respondent's reading of section 809(c)(1) for the following reasons. Although we believe respondent is correct in his assertion that section 809(d)(7) provides for a deduction by the initial insurer, we do not read section 809(c)(1) so narrowly. First, although the phrase "other consideration arising out of reinsurance ceded" is found in both section 809(d)(7) and section 809(c)(1), this phrase only specifies the sum being referred to, and does not indicate who would be entitled to the deduction with respect to that sum. To find otherwise would be to read this phrase out of context. Second, by *401 using the phrase "consideration in respect of assuming liabilities under contracts not issued by the taxpayer," the first clause of section 809(c)(1) refers specifically to a reinsuring company. It would therefore be illogical to construe the second clause as referring only to an initial insurer. The drafters of this section made clear their intent in the first clause; where no similar restriction is expressed in the second clause, none will be imputed. Respondent next argues that petitioner cannot rely on the first clause of the second sentence of section 809(c)(1) as authority for its claimed deduction. That sentence states: "Except in the case of amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded, amounts returned where the amount is not fixed in the contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums." (Emphasis added.) For support, respondent turns to the legislative history of section 809(c)(1) and section 820. The first clause of the second sentence of section 809(c)(1) (emphasized above) was added to the bill that became *402 the Life Insurance Company Income Tax Act of 1959 in connection with the addition of section 820. The purpose of the enactment of section 820 was to avoid double taxation with respect to modified coinsurance. The Senate Report discussing the provisions of this bill states that dividends to policyholders, paid with respect to the reinsured policy, are to be treated as dividends paid by the reinsurer rather than the initial insurer to the extent of reimbursement by the reinsurer to the initial insurer, while experience refunds paid by the reinsurer to the initial insurer are treated as reductions in premium income of the reinsurer and as other income received by the initial insurer thus avoiding double taxation. S. Rept. No. 291, 86th Cong., 1st Sess. (1959), 1959-2 C.B. 770, 798. Respondent correctly asserts that the first clause of the second sentence of section 809(c)(1) was enacted to prevent the treatment of experience refunds in the same manner as payment of dividends to policyholders by reinsurers. Respondent appears to argue, however, that because section 809(c)(1) was added to the Code contemporaneously with section 820, its application is limited to experience *403 refunds. Because the amounts at issue in the instant case and in Beneficial were not experience refunds, received by the reinsurer and returned to the initial insurer, respondent claims that such amounts are not within the purview of section 809(c)(1). Return premiums are defined in the regulations as amounts returned or credited which are fixed by contract and do not depend on the experience of the company or the discretion of the management. Sec. 1.809-4(a)(1)(ii), Income Tax Regs. Respondent's argument apparently equates "return premium" with "experience refund" in construing the return requirement of section 809(c)(1). However, the statute and the regulations specifically exclude experience refunds from the definition of return premiums. See sec. 809(c)(1); sec. 1.809-4(a)(1)(ii), Income Tax Regs. The amounts at issue in the instant case, as in Beneficial, were fixed by contract and were not determined by or dependent on the company's experience. Therefore, respondent's assertion that the amount paid to the initial insurer *404 is an experience refund is incorrect. Further, although the reinsurer received only the excess of the required reserves over the initial consideration contained in the contract, respondent agrees that the full amount of the reserves was constructively realized by the reinsurer and is includable in gross income. Respondent, however, refuses to accept that the reinsurer constructively returned an amount (the ceding commission), specified in the contract, to the initial insurer. Under Beneficial, petitioner may reduce the gross amount received from Transport by the amount constructively returned to Transport. [4]
Finally, respondent conceded on brief that resolution of the principal issue herein would be determinative of the treatment to be accorded the finders fee of $13,600. Thus, petitioner is allowed a deduction for such amount in the year in which it was paid. To reflect concessions of the parties and the foregoing, Decision *405 will be entered under Rule 155.
Footnotes
1. An insurance company may want to reinsure its risks for a number of reasons including the diversification of its business, the acquisition of another insurance company indirectly through the acquisition of its business, the avoidance of a concentration of risk in one geographic area or line of business, and relief from the surplus drain that may occur as a result of the heavy expenses and the necessity of establishing reserves connected with newly written policies.↩
2. All section references and reference to the "Code" are to the Internal Revenue Code of 1954, as amended and in effect during her year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. These amounts were determined as follows: ↩
1975
Coinsurance
Modified Coinsurance
Total
Reserves required
$675,762
$620,000
Recd. by Petitioner
615,762
Excess
$ 60,000
$620,000
$680,000
1976
Reserves required
$851,398
$780,000
Recd. by Petitioner
779,398
Excess
$ 72,000
$780,000
$852,000
4. We recently reached the same conclusion on similar facts in Individual Life Assurance Co. v. Commissioner,T.C. Memo. 1986-201, and Modern Security Life Insurance Co. v. Commissioner,T.C. Memo. 1985-629↩.